AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>135 NE Barron Drive Apt B203, Oak Harbor,<br>Washington, as further described in Attachment A | )<br>)<br>)   Case No.   MJ23-102<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
135 NE Barron Drive Apt B203, Oak Harbor, Washington, as further described in Attachment A, which is incorporated by reference

located in the _____ W estern _____ District of _____ W ashington _____ , there is now concealed *(identify the person or describe the property to be seized)*:
  See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

  ☑ evidence of a crime;

  ☑ contraband, fruits of crime, or other items illegally possessed;

  ☑ property designed for use, intended for use, or used in committing a crime;

  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Conspiracy to Distribute Controlled Substances, Distribution and Possession with Intent |
| 18 U.S.C. § 922(g) | Felon in Possession of a Firearm |

The application is based on these facts:

  ✓ See Affidavit of Abigail Sawyer, continued on the attached sheet.

  ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested
  under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

HSI Special Agent Abigail Sawyer
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   03/02/2023

_____
*Judge's signature*

City and state:  Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

2023R00229

# AFFIDAVIT OF ABIGAIL SAWYER

STATE OF WASHINGTON      )
                                 )    ss

COUNTY OF KING           )

I, ABIGAIL SAWYER, being first duly sworn, hereby depose and state as follows:

## PURPOSE OF THIS AFFIDAVIT

1.     I make this Affidavit in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 to search the premises described in subparagraph "a" below and in Attachment A. For this location, the evidence to be search for and seized are property and items more particularly described in Attachment B as well as any digital devices located therein. Attachment A and Attachment B are incorporated by reference.

a.     **SUBJECT PREMISES #9**: 135 NE Barron Drive Apt B203, Oak Harbor, WA, 98277.  **SUBJECT PREMISES #9** is located is in a light-colored multi-story apartment complex called the Oak Bay Station apartments.  The complex is comprised of multiple buildings that are not all connected to each other. Building B, marked "B," is located north of the leasing office where a sign clearly states "Oak Bay Station" and displays an address of 135 N.E. Barron Dr.  **SUBJECT PREMISES #9** is on the second story of building B, accessed by an external staircase. The door to the apartment is white in color and is clearly marked "B203."

2.     As set forth herein, there is probable cause to believe that a search of **SUBJECT PREMISES #9** will reveal evidence of violations of Title 21 of the United States Code.

3.      The items to be seized are described in detail in Attachment B.  These items comprise and/or may contain evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 (distribution, possession with intent to distribute, and

conspiracy to distribute and to possess with intent to distribute controlled substances) and Title 18, United States Code § 922(g) (Felon in Possession of a Firearm).

4.      The affidavit and application are being presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

## AGENT BACKGROUND

5.      I am a Special Agent (SA) with Homeland Security Investigations ("HSI") within the United States Department of Homeland Security (DHS).  As a Special Agent, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801, et seq., and other violations of federal law.  I have been a Special Agent with HSI since June 2019.  I was trained to conduct investigations relating to violations of federal law including the manufacturing and trafficking of controlled substances and money laundering through the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  Prior to my employment with HSI, I was a Criminal Investigator with the New York County District Attorney's Office (DANY) for two years where I conducted long-term investigations involving fraud, organized crime, and narcotics.  I am a graduate of the Nassau County Police Academy and became a certified Police Officer in New York State for my position with DANY.

6.      As a federal law enforcement officer and through my employment as a law enforcement officer at the state level, I have received formal training, as well as extensive on-the-job training, in the investigation of narcotics trafficking.  I have conducted and participated in investigations involving controlled substances, money laundering, and other criminal activity, including those leading to arrest and prosecution.  As a result of these investigations, I have become familiar with methods and techniques used by narcotics manufacturers and distributors, persons in possession of narcotics for purposes of sales and transportation, and persons conspiring to transport and sell narcotics.  I am also familiar with the methods employed by narcotics traffickers to conceal their trafficking activity and the origin of proceeds generated by this activity.  I am aware that

Affidavit of Special Agent Abigail Sawyer - 2
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

traffickers use slang and coded words, multiple cell phones, concealed compartments, "stash" houses to conceal their activities, and launder or otherwise conceal cash proceeds by hiding and transporting bulk cash, sending funds through wire transfers or bank accounts in other persons' names, or investing in assets placed in other persons' names.

7.    Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 18, United States Code § 922(g) and Title 21, United States Code §§ 841(a)(1) and 846 have been committed, are being committed, and will be committed by members of the below-described DTO, and that **SUBJECT PREMISES #9** described herein contain evidence of those offenses.

## SUMMARY OF INVESTIGATION & SOURCES OF INFORMATION

8.    I participated in the investigation described in this affidavit since approximately November 2022. I obtained the facts set forth in this affidavit through personal participation in the investigation described below, from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by various law enforcement officers participating in this investigation and in the other related investigations by agencies referenced in this affidavit.

9.    When this affidavit refers to vehicle ownership, either I or other agents involved in the investigation reviewed the relevant state vehicle records from the Washington State Department of Licensing (DOL), or the equivalent agency in other states. Similarly, when this affidavit refers to identification documents, either I or other agents involved in the investigation reviewed the relevant driver's license or similar records maintained by DOL, or the equivalent agencies in other states. When this affidavit refers to the criminal history of a subject, either I or other agents involved in the investigation reviewed the available criminal history from state or federal agencies. When this affidavit refers to telephone subscription records, either I or other agents involved in the investigation reviewed the subscriber records obtained from the telephone company

Affidavit of Special Agent Abigail Sawyer - 3
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by administrative subpoena or court order, or I obtained the information from other law enforcement officers familiar with this investigation. When this affidavit refers to beliefs or conclusions of investigators, these beliefs and conclusions are based on the collective training and experience of the agents involved in this investigation.

10.     Since this affidavit is submitted for the limited purpose of establishing probable cause in support of the requested search warrant, it does not set forth each and every fact that I, or others, have learned during the course of the investigation.  I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested search warrants.  As this is a long and complex investigation conducted by multiple agencies in multiple judicial districts, I have omitted significant details and events for the sake of brevity.

11.     This affidavit contains excerpts of transcripts of lawfully intercepted voice communications, some of which have been minimized to avoid intercepting non-pertinent, personal, or private information.  Other calls may contain very lengthy discussions of criminal activity, not all of which is relevant to the events discussed in this affidavit.  For this reason, I have included only portions, to include non-consecutive excerpted portions, of several calls copied from transcripts, and the summaries of the calls below are provided in sum and in part and do not purport to represent the entirety of the call.

## SUMMARY OF PROBABLE CAUSE

### Background of Investigation

12.     In August 2018, Special Agents (SAs) and taskforce officers (TFOs) with HSI and the Federal Bureau of Investigation (FBI) offices in Pittsburgh, Pennsylvania began to receive information regarding a drug trafficking organization (DTO) operating in Pennsylvania, Arizona, Washington, and other locations. Since that time, investigators have developed and received information from seven confidential sources, conducted over fifty controlled buys, installed/monitored pen registers on over two dozen telephones and Apple FaceTime accounts, installed and monitored numerous pole cameras, issued

Affidavit of Special Agent Abigail Sawyer - 4
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

subpoenas, executed search warrants on cellular telephones and iCloud accounts, and conducted hours of physical surveillance, among other investigative techniques. Eventually (as set forth below), investigators obtained authorization to intercept wire and electronic communications occurring on telephones used by suspected members of the DTO and to intercept oral communications and visual, non-verbal conduct occurring in a vehicle used by DTO members.

13.     Over the course of this investigation—which has to this point involved multiple applications to intercept wire/electronic communications occurring over several target telephones, and two applications to intercept oral communications/visual non-verbal conduct occurring in one target vehicle - investigators learned about a DTO based in Phoenix, Arizona that supplied Pennsylvania-based drug traffickers with multiple kilogram quantities of blue fentanyl "M30" pills.

14.     The Pennsylvania investigation then began to look at other distribution hubs serviced by the Phoenix operation.  Through the extensive investigation into the Phoenix suppliers, investigators discovered another DTO based in the Seattle, Washington area.  Intercepts suggest this DTO, which is headed by an individual named Bryce HILL, was resupplied every seven to ten days with over 1,000,000 blue fentanyl pills, over ten kilograms of cocaine, and multiple kilograms of methamphetamine. Based on their observations, research, and enforcement operations, detailed below, investigators believe they have identified numerous members of this DTO and their involved premises and vehicles, to include Shaunyae ALLEN, the individual residing at **SUBJECT PREMISES #9**.

**Title III Interception and Investigation of Bryce HILL**

15.     Investigators in Pittsburgh, PA initiated Title III interception of wire communications occurring over Bryce HILL's cellphone, 702-354-8467, TT39, [1] on

---

[1] Records received from T-Mobile in response to an administrative subpoena show that telephone number (702) 354-8467 (TT39) had no listed subscriber information. This telephone number was activated on June 19, 2022 and is

Affidavit of Special Agent Abigail Sawyer - 5
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

November 30, 2022.[2]  Communications received via the interception of TT39 revealed that HILL was a prolific narcotics distributor operating in the Western District of Washington, who used a number of couriers, redistributors and other facilitators to sustain his drug trafficking organization, including ALLEN, a suspected narcotics redistributor.

**Arrest of HILL and Search Warrants Executed on January 11, 2023**

16.     On December 20, 2022, HILL was indicted (along with other coconspirators) in the Western District of Pennsylvania for one count of violating Title 21 United States Code, Section 846, conspiracy to distribute controlled substances.

17.     On January 9, 2023, United States Magistrate Judge Brian A. Tsuchida authorized ten search warrants (five residential search warrants and five search warrants for vehicles), MJ23-007-01 – MJ23-007-10, including search warrants for HILL's residence and vehicle.

18.     On January 11, 2023, SAs and TFOs executed nine of these search warrants,  to include the five residential search warrants, and four of the vehicle search warrants (one vehicle was not located so that warrant was not executed). The results of the pertinent warrants are described in the paragraphs that follow.

---

currently active. SA Simpson attributes telephone number TT39 to HILL based on the following: (1) on November 14, 2022 (Magistrate Number 3:22-MJ-201) ping location data for TT39 showed the device depart Seattle-Tacoma Airport at 7:26 a.m. PST and arrive at Phoenix Sky Harbor Airport on the same date at 9:56 a.m. PST; (2) the top contact for TT39 was identified as (253) 255-9222 with listed subscriber "Alicia Parks"; (3) subsequently investigators obtained information that Delta Flight 1322 departed on November 14, 2022, at 7:17 a.m. PST from Seattle Tacoma Airport and arrived at 10:05 a.m. PST in Phoenix Sky Harbor Airport, which was identified with the ping parameters with a passenger "Bryce Hill," booked by "Alicia Parks"; (4) on November 16, 2022, at 1:59 p.m. MST, surveillance observed HILL, whom was identified by his JNET photo, exit a Land Rover at the 1003 West Washington Street, Tempe, AZ address, which was identified as a location in HILL's intercepts via TT39; (5) ping location data for TT39 showed the device depart Phoenix Sky Harbor Airport on November 20, 2022 at 7:11 p.m. PST, and arrive at Seattle-Tacoma Airport on November 20, 2022 at 9:56 p.m. PST; (6) subsequently, investigators obtained information that Delta flight 1712 departed on November 20, 2022, at 7:10 p.m. PST from Phoenix Sky Harbor Airport and arrived at 10:23 p.m. PST in Seattle Tacoma Airport, which was identified with the ping parameters with a passenger "Bryce Hill; and (7) a grand jury subpoena for TT39 listed Directory Services Identifier (DSID): 20646423487 associated with that phone number that had a subscriber "Mike Thomas" at "2444 Hemmen Way Place, Oak Harbor, WA 98277", which investigators noted "2444 Hemmen Way Place, was a previous address listed for HILL in open source searches.
[2] During the first audio interception of TT39, at approximately 12:34 a.m. EST on December 1, 2022, FBI SA James Simpson, who is familiar with HILL's voice from prior court-authorized intercepted calls, identified the male speaker using and possessing TT39 as HILL.

**January 11, 2023 Arrest of Bryce HILL and Search Warrant Executed on SUBJECT PREMISES 1 and SUBJECT VEHICLE 1**

19.     On January 11, 2023, investigators served search warrant (MJ23-007-1) at Bryce HILL's residence located at 4100 SW Edmunds St. Unit #232, Seattle, WA 98116 ("SUBJECT PREMISES #1").

20.     From SUBJECT PREMISES #1, investigators seized items to include approximately 26.7 kilograms of fentanyl pills.  Investigators also located and seized approximately 254.1 grams of marijuana, approximately $387,559 in US currency, five firearms, magazines, ammunition, a digital scale, and cellphones.

21.     Investigators located HILL inside the premises and arrested him pursuant to an arrest warrant (3:22-CR-21) issued in the Western District of Pennsylvania.  HILL was read his Miranda rights and invoked his right to an attorney; investigators did not interview HILL.

22.     Agents also executed a search warrant of HILL's vehicle, a black 2016 Mercedes S Class four-door sedan, with VIN WDDUG7JB2GA205822 (SUBJECT VEHICLE #1).  Agents located and seized items including additional firearms and documents.

**February 2023 Indictment of ALLEN and Search Warrant Issued**

23.     On February 22, 2023, ALLEN was indicted in this District for Conspiracy to Distribute Controlled Substances in violation of Title 21, United States Code, §§ 841(a)(1) and 846 (CR23-025).  Additional coconspirators were indicted on related charges on this date.

24.     On February 27, 2023, United States Judge Mary Alice Theiler issued a number of search warrants, including a warrant for a vehicle operated by ALLEN, SUBJECT VEHICLE #8 (MJ23-092).  The affidavit for these warrants is attached and incorporated as if set forth herein.  Investigators have subsequently identified ALLEN's residence, **SUBJECT PREMISES #9.**

///

Affidavit of Special Agent Abigail Sawyer - 7
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Shaunyae ALLEN's Role in DTO

25. During the interception of HILL's phone (TT39), investigators noted that HILL appeared to regularly conduct narcotics transactions with the user of cellphone number (425) 470-8467.

26. Records received from T-Mobile in response to an administrative subpoena show that telephone number (425) 470-8467 had no listed subscriber information. On December 8, 2022, HSI Seattle investigators conducted a ruse call to this number. During the ruse call, the user of this phone spelled his first and last name: Shaunyae ALLEN and provided his date of birth. I queried this name and date of birth through WA DOL records and found a Washington driver's license (WDL23318233B) under this name and date of birth. During the call, ALLEN also provided the last four digits of his social security number, which matches criminal history for ALLEN under the date of birth he provided. ALLEN also confirmed his involvement in a November 2022 arrest to include details about his being booked into jail in Snohomish County, which is consistent with his criminal history records. During the ruse call, ALLEN referenced that his previous residence was 12010 31st Avenue West, Everett, WA 98204, which is listed on his Washington driver's license.

27. I reviewed transcripts of calls between HILL and ALLEN in which the parties arrange several narcotics deals.

28. For example, on December 4, 2022, at 10:26 p.m. PST, HILL, via TT39 received an incoming call from ALLEN via (425) 470-8467. The transcript is as follows:

December 4, 2022 10:26 p.m. (PST) Session 167

| | |
|---|---|
| HILL/TT39: | Hello. |
| ALLEN/8467: | What's good, bro? |
| HILL/TT39: | What's happening? |

| | | |
|---|---|---|
| 1 | ALLEN/8467: | You remember we talked about that... that uh... that water before? |
| 2 | | |
| 3 | HILL/TT39: | Uh-huh. |
| 4 | ALLEN/8467: | What was the ticket though on that? |
| 5 | HILL/TT39: | That shit changing every time. I think we said- I think I hit you, |
| 6 | | wh- what I say? |
| 7 | ALLEN/8467: | Shit nigga nigga you told me like um, uh shit, twelve (12), or |
| 8 | | some shit like that. |
| 9 | HILL/TT39: | Oh, that's cool. Right? |
| 10 | | |
| 11 | ALLEN/8467: | This nigga gonna say, "that's cool," man, what is it bro, come |
| 12 | | on man? |
| 13 | HILL/TT39: | Nah that's cool, twelve (12) is cool cause they going for like |
| 14 | | eighteen (18) to two (2) bands all day. |
| 15 | ALLEN/8467: | A'ight. A'ight. |
| 16 | HILL/TT39: | How many you need? |
| 17 | ALLEN/8467: | Shit. Go with two (2), two (2). |
| 18 | | |
| 19 | HILL/TT39: | You need two (2) of 'em? |
| 20 | ALLEN/8467: | Yeah. |
| 21 | HILL/TT39: | Alight, a'ight, a'ight, let me call my boy see if he got any right |
| 22 | | now. |
| 23 | ALLEN/8467: | Alright bet. |
| 24 | | |

29.     Based on my training, experience, knowledge of the investigation, and plain language used by ALLEN and HILL, I believe that during this intercepted call, ALLEN asked about getting "waters," which I know to be a slang term for methamphetamine, from HILL.  ALLEN asked how much the methamphetamine cost per

pound ("What was the ticket though on that"). HILL explained the price fluctuates ("That shit changing every time") and asked what quote he provided ALLEN ("what I say"). ALLEN provided that HILL wanted $1,200 per pound of methamphetamine, and HILL again agreed to the price. HILL wanted to know how much methamphetamine ALLEN wanted, ALLEN replied that he wanted two pounds.

30.     I reviewed another transcript of a call between ALLEN and HILL that took place on December 8, 2022 in which ALLEN and HILL arrange another narcotics transaction. The transcript is as follows:

December 8, 2022, 9:55 p.m. (PST) Session 367

| | | |
|---|---|---|
| HILL/TT39: | Yo, yo. | |
| ALLEN/8467: | What's poppin' big dog? Where I need to be, man? | |
| HILL/TT39: | What it do? What it do? Shit, I'm over here uh, I'm passing through Tacoma right now. My bad, I had a late start. I can push out to you. What's up? What you got lined up? What should I bring to you? | |
| ALLEN/8467: | Shit. What- shit, I got- I got my fucking eleven (11) gone. | |
| HILL/TT39: | Eleven (11) zips? | |
| ALLEN/8467: | But you know... Yeah, I got eleven (11) of them that just gone shit, so if you want to shoot me the uh- the eighteen (18) if you like you say. I mean, it's up to you, bro. | |
| HILL/TT39: | Yup. Come on shit, I'm 'bout like, I'm 'bout like an hour away from Seattle. I'mma call you when I get to Seattle, see where you at. | |
| ALLEN/8467: | Bet. | |
| HILL/TT39: | A'ight. | |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| ALLEN/8467 | As a matter a fact, I got- I got uh- I got a little move in mother fucking Kirkland that I gotta do, but uh, the blueberry [PH] shit, you know? |
| HILL/TT39: | Yup. |
| ALLEN/8467: | So that's where I'm finna head to. I'm in Everett right now. I'm finna head down to Kirkland real quick and then shit after that. It's whatever. |
| HILL/TT39: | Alright, bet, come on. I'm 'bout to uh, I'mma meet you in like an hour. |
| ALLEN/8467: | Alright bet. |

31.     In the above call, I believe HILL asks ALLEN what he needs, and ALLEN states that his 11 "zips" are gone.  Based on my training and experience, I know that a narcotics traffickers use the term "zip" to mean ounces of narcotics.  ALLEN continued that he needed an additional 18 ounces of narcotics.  HILL agreed and added he would be in Seattle in about an hour.  ALLEN acknowledged and alluded that he had a "little move," possibly another drug transaction in Kirkland, WA.  ALLEN affirmed ("Alright bet").  Based on this conversation, I believe that ALLEN sold 11 ounces of narcotics and requested 18 more ounces of narcotics from HILL.

32.     Based on these calls (and additional calls that are not included here for the sake of brevity) I believe that ALLEN is a high-level redistributor that orders multiple pounds of methamphetamine to distribute to mid-level dealers in the Seattle area.

**Identification of ALLEN's Vehicle as SUBJECT VEHICLE #8**

33.     On February 17, 2023, investigators established surveillance at 8625 Evergreen Way, Everett, WA 98208 in order to follow ALLEN away from a prearranged appointment he had with his Washington Department of Corrections (DOC) Community Corrections Officer (CCO) at 9:00 a.m. PST at a Community Corrections Office.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

34.     At approximately 9:00 a.m. PST, SAs Jonas Restad and Scott Fusco observed ALLEN arrive in the parking lot of 8625 Evergreen Way driving a blue Hyundai Accent bearing California license plate 8PJC932, (SUBJECT VEHICLE #8). ALLEN exited the SUBJECT VEHICLE #8 and walked into the north end of the office building. After several minutes, SSA Marco Dkane approached SUBJECT VEHICLE #8 and peered through the windows. SSA Dkane communicated to the surveillance team that there were documents inside the vehicle, and that it looked as though ALLEN had been driving the SUBJECT VEHICLE #8 for some time.

35.     I was not physically present during this surveillance, but I queried the license plate of SUBJECT VEHICLE #8. The registered owner of the vehicle returned as EAN Holdings LLC, 14002 E 21st ST STE 1500, Tulsa City, OK.  Agents are aware this is the registration information for Enterprise Rental Car.

36.     After several more minutes, SA Restad contacted K-9 Customs and Border Protection Officer (CBPO) Kris Johnson who was waiting nearby with her narcotics detection K-9, "Remi" to perform a "narcotics sniff" of SUBJECT VEHICLE #8. "Remi" is trained to detect illicit drugs, to include fentanyl.  According to CBPO Johnson, her K-9 alerted to SUBJECT VEHICLE #8. CBPO Johnson provided an affidavit to SA Restad that states the following:

37.     "On 2/17/23, I met with HSI SA Jonas Restad after he requested a K-9 sniff of a vehicle located in a parking lot at 8625 Evergreen Way, Everett, WA 98208. At approximately 0905, K-9 "Remi" and I started our K-9 sniff of a blue Hyundai Accent with CA plate # 8PJC932. At approximately 0906, K-9 "REMI" alerted under the vehicle behind the front driver's side tire and to the driver's door seam for the presence of the odor of narcotics."

38.     At approximately 9:30 a.m. PST, SUBJECT VEHICLE #8 returned to the SUBJECT VEHICLE #8 and drove away from the Community Corrections Office. Investigators followed SUBJECT VEHICLE #8 as it made several stops in the area before driving to I-5 North at approximately 10:35 a.m. PST.

39.     At approximately 11:02 a.m. PST, SUBJECT VEHICLE #8 parked the SUBJECT VEHICLE #8 in the driveway of the rear of a residence located at 2326 88th Drive NE, Lake Stevens, WA 98258 and appeared to go inside. (Note: ALLEN told his CCO that he was living at the above Lake Steven's address with his "brother").

40.     At approximately 2:00 p.m. PST, surveillance was terminated at this time. Throughout the observations of SUBJECT VEHICLE #8 on this day, ALLEN was the driver and sole occupant of the SUBJECT VEHICLE #8.

41.     On February 23, 2023, United States Magistrate Judge Brian A. Tschuida authorized a tracker warrant to track SUBJECT VEHICLE #8 (case number MJ23-082).

42.     Later on February 23, 2023, I obtained Enterprise Rental records pursuant to an administrative subpoena.  These records list ALLEN as the renter of this vehicle. These records indicated that ALLEN's rental period began February 2, 2023, with a "due to return" date of February 23, 2023.  Enterprise confirmed that ALLEN extended his vehicle an additional week, through March 2, 2023.

43.     On February 23, 2023, agents installed a tracker on SUBJECT VEHICLE #8 as it was parked in a public parking lot at 8625 Evergreen Way, Everett, WA 98208 as ALLEN attended another prearranged appointment he had with his Washington DOC CCO at 9:00 a.m. PST at a Community Corrections Office.

44.     The tracker showed that on February 23, 2023 ALLEN travelled from this meeting to 2326 88th Drive NE, Lake Stevens, WA 98258, the address ALLEN described as his residence to his CCO, as stated above.  The tracker warrant indicated ALLEN spent several hours in this area, and then traveled north on Interstate 5.  After several hours, the tracker appeared to malfunction, and generated no data after approximately 6:30 p.m. on February 23, 2023.  After this time, ping data (described below) indicate ALLEN traveled to Whidbey Island, which encompasses the city of Oak Harbor, where he appeared to spend the night.

///

**February 22, 2023 Surveillance of ALLEN**

45.     On February 22, 2023, SSA Dkane conducted ruse telephone calls with ALLEN.  During the course of their communication, SSA Dkane represented himself to be a representative of an insurance company following up on previous calls regarding ALLEN's recent car accident.  During the course of their communication, ALLEN complained that he was still forced to drive a rental car because his car had still not been fixed.  SSA Dkane confirmed that he was still in the "Hyundai midsize" and ALLEN made statements to the effect "might have to get something tomorrow" because he was paying out of pocket for the vehicle and that he was renting it week-to-week.  SSA Dkane arranged for ALLEN to pick up some insurance paperwork at 8:00 p.m. that evening from a local insurance office, located on Whidbey Island, WA.

46.     Agents then established surveillance at this rental location and observed ALLEN arrive at 8:00 p.m. (PST) driving SUBJECT VEHICLE #8.  He was the driver and sole occupant of SUBJECT VEHICLE #8.  Agents attempted to follow ALLEN as he drove SUBJECT VEHICLE #8 through parking lots and side streets in Oak Harbor, WA.  Several minutes later, agents observed the SUBJECT VEHICLE #8 parked at an apartment complex located at 135 NE Barron Drive, Oak Harbor WA, an apartment complex with several buildings.  This apartment complex contains **SUBJECT PREMISES #9.**

47.     SA Restad then contacted Oak Harbor Police Department Sergeant Andreano and inquired about this apartment complex in general.  Sergeant Andreano advised that this complex is known for narcotics distribution activity, and provided buildings A, B, and C as specifically known to be involved in drug sales. After several minutes, agents again observed an individual closely matching the physical description of ALLEN depart building B of this apartment complex, holding a large bag with straps and enter SUBJECT VEHICLE #8.  **SUBJECT PREMISES #9**, 135 NE Barron Drive Apt B203, Oak Harbor, WA, is a unit located within building B.  ALLEN was the driver and sole occupant of SUBJECT VEHICLE #8.  Agents attempted to follow the vehicle, but

again were unable to do so because it drove in an unconventional manner through parking lots and side streets.

**GPS Location Data for ALLEN's Phone (TT5)**

48.     On February 24, 2023, United States Magistrate Judge Brian A. Tsuchida authorized a pen register and trap and trace order for ALLEN's cellphone, 425-470-8467, TT5. I reviewed GPS information obtained from T-Mobile pursuant to this order. I noted that from the initiation of the "ping" order on February 24, 2023 through today's date, March 2, 2023, ALLEN's phone consistently generated location data from the Oak Harbor region of Whidbey Island. ALLEN's phone "pinged" in this area through the duration of every night between February 24, 2023 and March 2, 2023. The radius of most pings is between 4,000 and 13,000 meters, indicating the ping has a large margin of error. However, these "pings" suggest that ALLEN resides in the area of Oak Harbor on Whidbey Island, the location of **SUBJECT PREMISES #9.**

**March 2, 2023 Arrest of ALLEN and Search of SUBJECT VEHICLE #8**

49.     On March 2, 2023, HSI agents and task force officers arrested ALLEN at his DOC appointment at 8625 Evergreen Way, Everett, WA 98208 on the arrest warrant that issued in conjunction with his indictment on February 22, 2023 (CR23-025), as discussed above.

50.     Agents executed the search warrant of ALLEN's rental vehicle, SUBJECT VEHICLE #8. Agents located a seized a digital scale in the vehicle and noticed a plastic bag containing narcotics that was located under the vehicle. The bag contained approximately 29 grams of a powder that field-tested positive for cocaine, 13.7 grams of a rock-like substance which field-tested positive for crack cocaine, and 5.8 grams of pills that field-tested positive for fentanyl.

51.     HSI TFO Chris Meyers, who participated in the search warrant, reviewed video surveillance from a nearby business with a view of the parking lot of the DOC office and was able to determine that immediately prior to his appointment, ALLEN leaned out of SUBJECT VEHICLE #8 toward the location where the bag of drugs was

found.  TFO Meyers noted that the car and ground were wet due to the weather, but the bag was dry, indicating it had been placed there recently.  Additionally, when ALLEN was contacted by agents, he told them he had been dropped off by someone, possibly indicating that he was attempting to conceal his narcotics trafficking activities from law enforcement by not acknowledging SUBJECT VEHICLE #8 was his.  Based on the location of the bag of narcotics under SUBJECT VEHICLE #8, its recent placement there, the surveillance video reflecting ALLEN leaning out of SUBJECT VEHICLE #8 in the direction of where the bag of narcotics was found, I believe the bag of narcotics belonged to ALLEN and he was placed it under SUBJECT VEHICLE #8.

**Identification of SUBJECT PREMISES #9**

52.      Prior to ALLEN's arrest, agents had identified two addresses associated with ALLEN.  One address was 2326 88th Dr NE, Lake Stevens, WA (the "Lake Stevens address").  This is the address ALLEN provided to his DOC CCO and to an HSI agent conducting a ruse call as an insurance representative following an accident and subsequent arrest in November 2021.  Agents also followed ALLEN to the Lake Stevens address following a DOC appointment on February 17, 2023.  The second address associated with ALLEN is 135 NE Barron #B203, Oak Harbor Dr, Oak Harbor WA (**SUBJECT PREMISES #9**).  This address has been  identified by agents to be ALLEN's true residence for reasons detailed below.

53.      Following ALLEN's arrest, he was transported to the HSI Seattle field office where he was briefly interviewed by SA Restad and SSA Dkane.  SA Restad told ALLEN he was being recorded, explained the circumstances of his arrest today, and advised ALLEN of his *Miranda* rights verbally and in writing.  ALLEN waived his rights and was briefly questioned.

54.      During the course of the interview, agents learned information to include the following, which is not a verbatim recitation of his statements, but is provided in substance and in part.  SSA Dkane told ALLEN he has been indicted as part of the case with HILL.  SSA Dkane explained he was concerned about the violence in the case and

Affidavit of Special Agent Abigail Sawyer - 16
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    cited a call between ALLEN and HILL discussing shooting up a house in Oak
2    Harbor.  ALLEN disputed that he personally made the statements in the call, which SSA
3    Dkane paraphrased.  SSA Dkane acknowledged that these specific statements were not
4    made by him (some were made by HILL).

5         55.    SSA Dkane explained that agents had been following ALLEN and were
6    aware of his identified addresses in both Lake Stevens and Oak Harbor.  SSA Dkane
7    asked about safety issues, weapons, and whether anyone would be home at the Oak
8    Harbor and/or Lake Stevens addresses if and when agents entered them.  ALLEN stated
9    that the locations would contain the "registered owners." With regard to **SUBJECT**
10   **PREMISES #9**, ALLEN relayed that no one would be home right now, but Ron Cabell
11   would be home around 2:00 p.m. (PST).  SSA Dkane referenced Cabell's address as
12   being unit B203.  ALLEN did not correct SSA Dkane or deny this but refused verbally
13   confirm it when asked to do so on the recording.  Agent Dkane then asked him if there
14   would be weapons at this house and ALLEN affirmed "they" had weapons and were the
15   "registered owners."  ALLEN would not indicate how many or what kinds of weapons
16   were there.  SSA Dkane then asked ALLEN if the weapons were automatic guns or
17   handguns.  ALLEN stated he did not know, and then invoked his rights to an attorney and
18   agents ceased questioning and ended the interview.

19        56.    Agents know that the "Oak Harbor" location is in fact 135 NE Barron
20   #B203, Oak Harbor Dr, Oak Harbor WA, for reasons to include the following:

21
22       a.  Agents reviewed call transaction records for ALLEN's phone (425-470-8467),
23          **TT5,** and found records of calls between him and Ronald Cabell.  Agents know
            this is ALLEN's phone through the intercepted calls between ALLEN in HILL on
24          this phone as well as numerous ruse calls with ALLEN on this phone, in which he
            fully identified himself.  These call records show multiple communications
25          between ALLEN's phone and 347-513-3464.  This phone number is associated
26          with Ronald Cabell per a commercially available database of public records. I
            spoke with an Oak Harbor detective, who queried this number through their
27          internal systems. and confirmed it is associated with Ronald Cabell. Agent noted
28

over 300 contacts between ALLEN and this phone between November of 2022 and February of 2023.

b. Agents corresponded with Oak Harbor Police Sgt. Gravel about Cabell and **SUBJECT PREMISES #9**. Sgt. Gravel advised that Cabell had a history of being involved in the narcotics business in a low-key fashion, and also had some history of domestic violence in 2021.

c. Agents observed ALLEN coming to and leaving down the stairs of building B, which is the building in which **SUBJECT PREMISES #9** is located (B203 is located on the second floor, up the stairs).

d. Oak Harbor police officers conducted spot surveillance of **SUBJECT PREMISES #9** and observed ALLEN's vehicle parked in the same place (outside of building B) where agents observed ALLEN parking during the surveillance on February 22, 2023.

e. Per commercially available public records, Cabell's current residence is **SUBJECT PREMISES #9**.

f. Per agents' communication with ALLEN's DOC CCO, ALLEN consistently provided his address as the Lake Stevens address. However, agents reviewing GPS ping information indicated that the vehicle was in fact in the vicinity of Oak Harbor, WA on most nights. Additionally, ALLEN claimed he was staying with his brother at the Lake Stevens address, and also told an undercover agent (during the insurance ruse call) this was his address with his brother. However, agents have learned that ALLEN does not have a brother living locally and that the individual he identified as his brother at the Lake Stevens address is in fact his friend. Based on my training and experience, I know that narcotics traffickers are unlikely to provide DOC with their true address.

## **ALLEN and Cabell's Criminal Histories**

57. I reviewed ALLEN's criminal history per NCIC and determined that ALLEN has been convicted of a number of felonies to include the following:

Affidavit of Special Agent Abigail Sawyer - 18
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.      In 2011, ALLEN was charged with and convicted of assault and possession of a stolen firearm in Island County Superior Court.

b.      In 2012, ALLEN was also charged with and convicted of assault in Island County Superior Court.

c.      In 2016, ALLEN was charged with and convicted in 2016 with assault with a deadly weapon in Island County Superior Court.

58.     I reviewed Cabell's criminal history per NCIC and determined that Cabell has been convicted of one felony:

a.      In 2010, Cabell was charged with and convicted of assault in Island County Superior Court. His criminal history, however, reflects that his right to possess firearms was restored in 2022.

**Conclusion**

59.     Based on the above factors including "pings" generated by ALLEN's phone, ALLEN's statements during his interview, surveillance observations, and ALLEN's communication with Cabell, I believe ALLEN has been residing at **SUBJECT PREMISES #9,** and I believe evidence of narcotics trafficking is contained within **SUBJECT PREMISES #9.**  Additionally, I believe evidence of Felon in Possession of a Firearm will be contained within the residence given ALLEN's statements to law enforcement and ALLEN and Cabell's felony convictions.

**KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

60.     Based on my training and experience, I know that person(s) engaged in narcotics trafficking activities oftentimes use their vehicles to transport, and store evidence of their criminal activities.  I know that persons who engage in illicit activities such as narcotics trafficking and/or transportation will conduct such activities on a continuing basis and will commonly have evidence of said activities on hand, secreted at their premises, on their person, or in their vehicle, in order to maintain and facilitate their activities.  Furthermore, I know that narcotics trafficking is an ongoing activity, as it takes time to develop "clientele," the nature of the activity requires a steady customer flow, and the business tends to be too lucrative to abandon.  I am aware that person(s)

Affidavit of Special Agent Abigail Sawyer - 19
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

engaged in narcotics trafficking and money laundering activities will oftentimes use large backpacks, sport bags or luggage to transfer bulk currency and/or narcotics from one individual to another, as these bags help conceal the illicit narcotics or large amounts of bulk currency from public view. I am also aware that person(s) engaging in narcotics trafficking activities will secrete the narcotics or bulk currency in non-factory compartments that are custom built in a vehicle. These compartments conceal the narcotics or other illicit contraband from plain view and only a thorough and complete search of a vehicle will determine whether a compartment exists and it contains contraband.

61.    I know from my training and experience that DTOs prefer to use trusted couriers to move their narcotics and bulk currency. When a courier is trusted, it is common for a drug trafficking organization to instruct that courier to conduct multiple narcotics or bulk currency pickups in a single day or over consecutive days. Oftentimes, the courier will pick up bulk quantities of narcotics or currency from multiple individuals before consolidating it and delivering it to a third-party individual or location at the direction of the DTO.

62.    I know from training and experience that drug dealers often keep records of their trafficking activities within their residences, vehicles and within their "stash locations" (*i.e.*, a storage unit or residence owned or rented in the name of a third party). These records are kept so that the drug dealers can keep track of the money owed to them for the amount of drugs being sold or transported. I know persons involved in the trafficking of illicit drugs often keep large amounts of cash either on hand, on their person, within their residence or within their vehicle or stash location. The selling of illicit drugs is a cash business, and I know, from training and experience, that persons involved in this business need cash to re-supply themselves with product, and that they oftentimes avoid the traditional money holding facilities in an attempt to avoid detection by law enforcement. I also know that drug dealers often convert cash proceeds into valuable items such as expensive jewelry, clothing items, and cars.

Affidavit of Special Agent Abigail Sawyer - 20
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

63.     I know from my training and experience that drug traffickers utilize interstate and international travel to further the goals of their operation such as to resupply themselves with narcotics to sell, to engage in financial transactions, and to launder proceeds.  Drug traffickers often maintain records of their travel in the form of airline tickets, notes and travel itineraries; airline schedules; bills; charge card receipts; hotel, motel, and car rental statements; correspondence with travel agencies and other travel-related businesses; airline, rent-a-car, and hotel frequent flier or user cards and statements; passports and visas; telephone bills; photographs of foreign locations; and papers relating to domestic and international travel. These records are oftentimes located in the vehicles the Drug Traffickers are utilizing.

64.     I also know that people involved in the possession and distribution of controlled substances often maintain in their residences, and sometimes at stash locations, vehicles and storage units, indicia of occupancy and ownership, including, but not limited to records that establish the person(s) who have control, possession, custody or dominion over the property from which evidence is seized, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs, leases and mortgage bills.  Such records are evidence that a particular person is residing at a residence and associated with what is found inside the residence.

65.     Those involved in the distribution of illicit drugs often use money remittance businesses to assist in moving and distributing the money earned from their drug trafficking activities.  By using these businesses to wire funds to other parts of the United States and beyond, the drug traffickers are attempting to hide this money and its source from law enforcement.

66.     I know that persons who illegally possess and distribute controlled substances often possess firearms and ammunition to protect themselves, their drugs and their drug proceeds from others.  As noted above, drug dealing is a cash business that makes the dealer a target of robberies, and dealers often maintain firearms and

Affidavit of Special Agent Abigail Sawyer - 21
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ammunition to protect their drugs and cash.  I also know that drug dealers will often need or use firearms to help them intimidate potential rivals and to aid in the collection of drug debts.  Therefore, I know that firearms and ammunition, knives and other weapons are often found at the location of narcotic search warrants and on persons involved in drug dealing and trafficking.

67.     I know from training and experience that it is common for drug traffickers to possess drugs, drug paraphernalia, and other items which are associated with the sale and use of controlled substances such as scales, containers, cutting agents, and packaging materials in their residences, stash houses, storage units, garages, outbuildings or vehicles on their property.

68.     I also know from training and experience that drug traffickers frequently try to conceal their identities by using fraudulent names and identification cards.  Once identities have been created or stolen from other citizens, drug traffickers use those identifications to falsify records such as Department of Licensing records and phone records for the purpose of theft of services and to evade detection by law enforcement.

## DIGITAL DEVICES AND FORENSIC ANALYSIS

69.     As described above and in Attachment B, this application seeks permission to search for evidence, fruits and/or instrumentalities that might be found at the **Subject Premises,** in whatever form they are found.  One form in which the evidence, fruits, and/or instrumentalities might be found is data stored on digital devices,[1] including

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

Affidavit of Special Agent Abigail Sawyer - 22
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cellular telephones. Thus, the requested warrants would authorize the seizure of digital devices and, potentially, the copying of electronically stored information from digital devices, all under Rule 41(e)(2)(B).

70.     *Probable cause.*  Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device is found at the **Subject Premises**, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes of 21 U.S.C. §§ 841 and 846 (distribution, possession with intent to distribute, and conspiracy to distribute and to possess with intent to distribute controlled substances) as well as related offenses under 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) and §§ 1956 and 1957 (money laundering) will be stored on those digital devices or other electronic storage media.

71.     As reflected in the paragraphs above, the members of the DTO, including ALLEN, have been communicating with fellow DTO member HILL via cellular phones.

72.     Based on my training and experience, as well as information I have obtained from other law enforcement agents, I know that drug traffickers use cellular telephones to maintain contact with their suppliers, distributors, and customers.  They prefer cellular telephones because, first, they can be purchased without the location and personal information that landlines require.   Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs.   Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since the use of cellular telephones became widespread, every drug trafficker with which I have interacted has used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession cellular

phones that they previously used, but have deactivated or discontinued using.  Based on my training and experience, and information I have obtained from other law enforcement agents, I know the data maintained in a cellular telephone used by a drug trafficker is often evidence of a crime or crimes.  This includes the following:

a.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.     The stored list of recent received calls and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.     Stored text messages are important evidence, similar to stored numbers.  Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.      Photographs and video recordings on a cellular telephone, including metadata, are evidence because they help identify the user, either through his or her own picture/video, or through pictures/videos of friends, family, and associates that can identify the user and the locations the user has been. Pictures/videos also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph/video groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken.  Showing where the photo was taken can have evidentiary value.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e.      Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

## SEARCH TECHNIQUES

73.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrants I am applying for will permit seizing, imaging, or otherwise copying the digital devices that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

74.     Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to conduct off-site searches of the digital devices and/or forensic images, using the following procedures:

Affidavit of Special Agent Abigail Sawyer - 25
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**A.     Processing the Search Sites and Securing the Data.**

a.      Upon securing the physical search site, the search team will conduct an initial review of any digital devices located at the **Subject Premises** and described in Attachment A that are capable of containing data or items that fall within the scope of Attachment B to this Affidavit, to determine if it is possible to secure the data contained on these devices onsite in a reasonable amount of time and without jeopardizing the ability to accurately preserve the data.

b.      In order to examine the electronically stored information ("ESI") in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit.[1]

c.      A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer.  When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive.  A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive.  Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the **Subject Premises** described in Attachment A will not result in access to any data physically located elsewhere.  However, digital devices at the **Subject Premises** described in Attachment A that have previously connected to devices at other locations may contain data from those other locations.

---

[1] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures.  When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties.  Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence.  Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess.  Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case.  Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

d.    If based on their training and experience, and the resources available to them at the search site, the search team determines it is not practical to make an on-site image within a reasonable amount of time and without jeopardizing the ability to accurately preserve the data, then the digital devices will be seized and transported to an appropriate law enforcement laboratory to be forensically imaged and reviewed.

**B.    Searching the Forensic Images.**

a.    Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.  Those techniques, however, may necessarily expose many or all parts of the data on the digital devices to human inspection in order to determine whether it contains evidence described by the warrant.

**PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION**

75.    Because of the nature of the evidence that I am attempting to obtain and the nature of the investigation, I have not made any prior efforts to obtain electronically stored evidence based on the consent of any party who may have authority to consent.  I believe, based upon the nature of the investigation and the information I have received, that if the targets of the investigation become aware of the investigation in advance of the execution of a search warrant, they may attempt to destroy any potential evidence, whether digital or non-digital, thereby hindering law enforcement agents from the furtherance of the criminal investigation.

76.    I respectfully request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the applications, affidavit and search warrants.  I believe there is good cause to seal these

Affidavit of Special Agent Abigail Sawyer - 27
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  documents because they are related to an ongoing investigation involving multiple

2  Districts and their premature disclosure may seriously jeopardize that investigation.

3  Disclosure of these materials would give the targets of the investigation an opportunity to

4  destroy evidence, change patterns of behavior, notify confederates, and/or flee from

5  prosecution.

## CONCLUSION

6

7        77.     Based on the foregoing, I respectfully submit there is probable cause to

8  believe that evidence, fruits, and instrumentalities of Title 21 U.S.C. §§ 841 and 846

9  (distribution, possession with intent to distribute, and conspiracy to distribute and to

10  possess with intent to distribute controlled substances), as well as 18 U.S.C. § 922(g)

11  (felon in possession of a firearm), will be present at the **Subject Premises.**

12

13

14                                         Abigail Sawyer
15                                         Special Agent
16                                         Homeland Security Investigations

17
        The above-named agent provided a sworn statement attesting to the truth of the
18
   contents of the foregoing affidavit by telephone, pursuant to Federal Rues of Criminal
19
   Procedure 4.1. and 41(d)(3), on this 2nd day of March, 2023.
20

21

22

23                                         THE HON. BRIAN A. TSUCHIDA
24                                         United States Magistrate Judge

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## ATTACHMENT A

2

### Property to Be Searched

3

**SUBJECT PREMISES #9**: 135 NE Barron Drive Apt B203, Oak Harbor, WA, 98277.

4

SUBJECT PREMISES #9 is located is in a light-colored multi-story apartment complex

5

called the Oak Bay Station apartments.  The complex is comprised of multiple buildings

that are not all connected to each other. Building B is marked "B" and is located north of

6

the leasing office where a sign clearly states "Oak Bay Station" and displays an address

7

of 135 N.E. Barron Dr. SUBJECT PREMISES #9 is on the second story of building B,

accessed by an external staircase. The door to the apartment is white in color and is

8

clearly marked "B203."

9

10

11

And any digital devices found therein.

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT B**

**Items to be Seized from the Subject Premises**

From the **Subject Premises** identified in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence, instrumentalities, or fruits of violations of Title 21 U.S.C. §§ 841 and 846 (distribution, possession with intent to distribute, and conspiracy to distribute and to possess with intent to distribute controlled substances) as well as related offenses under Title 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) and §§ 1956 and 1957 (money laundering):

1.      Controlled substances, to include: cocaine, crack cocaine, heroin, hashish, marijuana, methamphetamine, MDMA, fentanyl and synthetic opioids;

2.      Monetary instruments, to include: currency, cryptocurrency, money orders, bank checks, gift cards, or similar monetary instruments, in excess of $500;

3.      Bank account information including bank statements, deposit tickets, canceled checks, Certificates of Deposit, safe deposit box rental agreement and entrance log, credit card statements and financial statements for domestic and foreign bank accounts, copies of money orders and cashier's checks, and records reflecting domestic and/or international wire transfers, other financial documents to include money transfer usernames and receipts, (e.g. CashApp, Zelle, ApplePay usernames);

4.      Narcotic-related paraphernalia, including items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items;

5.      Documentary evidence relating to the purchase, sale, and/or distribution of controlled substances;

6.      Notes, letters and other items which relate to distribution of controlled substances;

7.      Documents and other items tending to show the existence of other stored drugs as follows: rental agreements, receipts, keys, notes and maps specifically concerning off-site storage rooms and lockers, brochures/business cards for leasing companies, any lease agreements;

Affidavit of Special Agent Abigail Sawyer - 30
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Address books, daily logs, daily telephone diaries, calendars, and appointment books;

9.      Travel information to include itinerary, boarding pass, frequent flyer documents, luggage tags and receipts;

10.     Shipping information to include labels, packaging materials;

11.     Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented;

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth;

13.     Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor

14.     Jewelry to include rings, bracelets, and watches, and other precious metals;

15.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close said compartments;

16.     Cellular telephones and other communication devices including Blackberry, Android, Galaxy, iPhone, iPad, and similar devices. The government may search any cell phone or other communications devices seized, without further authorization, for the following items:

Affidavit of Special Agent Abigail Sawyer - 31
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

2   b. Stored list of recent received, sent, or missed calls;

3   c. Stored contact information;

4   d. Stored photographs and videos related to the aforementioned crimes of investigation, or photographs that may show the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs and videos;

6   e. Stored text messages related to the aforementioned crimes of investigation, including Apple iMessages, WhatsApp, TextNow, Signal and Telegram messages or other similar messaging services or applications where the data is stored on the telephone.

The warrant authorizes the forensic examination of any seized cell phone or other communication device for the purpose of identifying the electronically stored data described above. This review may be conducted by any federal or local government personnel, sworn or unsworn, assisting in the investigation, which may include – in addition to law enforcement officers and agents – federal and local contractors and support staff, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, Homeland Security Investigations may deliver a complete copy of the electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Affidavit of Special Agent Abigail Sawyer - 32
USAO 2023R00229

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970